This is People v. Lawrence Ramey and for the appellant is Ms. Terrence and for the appellee Mr. Manchin. You may proceed. Good afternoon. May it please the court. I am Janine Terrence with the 4th District Appellate Defender's Office and I'm here to represent Ms. Lawrence Ramey. Following a jury trial on one charge of criminal sexual assault and one charge of aggravated criminal sexual abuse, Mr. Ramey was found guilty of only aggravated criminal sexual abuse and not guilty of criminal sexual assault. As courts have stated, accusations in sex cases are easily made but difficult to disprove. This case was no different. There was no physical evidence in this case. It was simply the word of the complaining witness, an MP, against that of Mr. Ramey. Credibility was the determining factor in this case. Accordingly, when the trial court denied Mr. Ramey's request to impeach MP with several prior inconsistent statements, to impeach her with prior false accusations of sexual assault by his sons against her, and to impeach her with testimony about her reputation for untruthfulness in the community, the trial court virtually denied Mr. Ramey the right to present a defense. This afternoon, I would like to address just two of those specific errors. The failure to allow the impeachment with the prior inconsistent statements and the failure to allow the evidence of the prior false accusations. However, I would be happy to address any concerns that you have about the remaining issues in the appellant's brief. First, the trial court denied Mr. Ramey the right to present a defense in that he was prohibited from eliciting on cross-examination each of the prior inconsistent statements that MP had made. The relevant facts indicated that on the afternoon in November of 2007, MP was taken by her mother to the Children's Advocacy Center in Bloomington, where Charnette Griffin, a representative, spoke with her about allegations of sexual assault that had been levied against Mr. Ramey and his sons. During that interview, the initial part of the interview, MP denied anything having occurred. On six different occasions, she denied that Mr. Ramey had done anything to her sexually inappropriate. Defense counsel wanted to impeach MP during her testimony at trial with each of those prior inconsistent statements, but the trial court disallowed it. Didn't the trial court allow some questioning? Only one question. Only one general question as a sort of cumulative question, which failed to reflect the weight that should be given to a testimony. The trial court wouldn't let the defendant go into the allegations against the two sons. That's true. But with regard to the prior inconsistent statements, the court went beyond that, because the questions that were thought to be asked didn't necessarily deal with the sons. They were direct questions that would deal with Lawrence Ramey, and the other sons, or the information regarding the sons wouldn't have come in. The questions that were sought to be introduced were simple questions. The first question was, has anything ever happened to you where you felt that it shouldn't happen? Has anyone done anything to you or your body? And there was some suggestion that she said, uh-uh. And there was a question that... And the answer should have been, the sons did it? Well, if she would have been advised that the questions were just regarding Lawrence Ramey... Wasn't that what the trial court was trying to do here? He was trying to keep out questioning regarding the sons? He was. And that was Aaron himself. But with regard to the prior inconsistent statements, it could have been done, allowing the impeachment. And when you have that Sixth Amendment right to confrontation, that right to cross-examine, the right to impeach, you have to address the concerns that you would keep it out. And in this case, you have interest to avoid confusion, to avoid problems with the completeness doctrines that just don't justify compromising the Sixth Amendment right. And here, confusion could have been alleviated. Quite clearly, the questions were simple and they could have been directed only with regard to Mr. Ramey and could have been answered. There was no problem with the completeness doctrine because the other information didn't have to come in with regard to the prior inconsistent statements because they were only dealing with Mr. Ramey. The fact that she'd initially denied being attacked by Mr. Ramey, that was allowed in, right? Just one statement. However, the defense could not put forth an effective defense to allow the jury to know that NP was interviewed. Not just once and asked this question and she said no, but she was asked this question over a period of time where she had time to reflect and she said nothing happened. Which is a quite different story than saying, well, were you asked and you said no as opposed to were you asked and you said no. You were asked again in a different way and you said no. And you were asked yet again and you said no. And then you were asked a couple more times and you said no. It's quite different than saying, well, you were asked and you declined to reveal that something happened. I think with regard to his right to show that she should not, the jury should give scant weight to her credibility, to her testimony. It was necessary that he should have been allowed. And those statements weren't, those were statements that should have come in. And ordinarily they do come in. Prior inconsistent statements are a traditional way to impeach a witness's credibility. The court didn't say that there was something wrong with the statements so they shouldn't come in. It just said, well, let's just keep it to one statement because I think that's good enough. And in this case it wasn't good enough. And because it wasn't good enough, you have a violation of a Sixth Amendment right to confrontation, his right to present his defense without any interest on behalf of the court, without any real legitimate interest to compromise that right. And in that regard I would ask that this court vacate his conviction. Furthermore, in this case, given that credibility was in essence the only reason that Mr. Rainey was found guilty, the jury did not find that the complaining witness was so credible that he was found guilty on all accounts, but only that in their way it was on the hinge. And this information, the prior inconsistent statements, the prior false accusations, the information that she had a reputation for untruthfulness in the community would have made the difference. With regard to the prior false allegations, you have a situation where Enke, in the same CAC interview, had accused Mr. Rainey's sons of criminal sexual assault. They were taken to trial. Jonathan Rainey, I think, faced three counts of criminal sexual assault and Michael Rainey faced one count in McLean County. They were acquitted by a jury. Defense counsel wanted to introduce that testimony from the son saying she accused us of criminal sexual assault, we didn't do it, and we were acquitted by a jury of not doing it. The court refused to allow that information, and I argue that that decision was, again, another round of reversible error, given that you have a Sixth Amendment right to controvert the state's proof. And in this case, you have prior false accusations. How do we know they were false? The prior decisions simply said the sons were not convicted, or the evidence was not sufficient to prove them guilty beyond a reasonable doubt. That doesn't mean they didn't happen. Well, we don't have to know they're absolutely false. That's not the standard. The standard set by this court has been that it has to be more likely than not false. It just has to be relevant. And in this case, you have an acquittal. That's not like a hung jury. It's not like the jury deciding, well, I can't make a decision because I'm not quite sure. The state didn't quite prove its case. We have an actual acquittal. A jury hearing the evidence and saying, no, I don't think that this person has been proven to be guilty of this crime. You have the testimony of the sons denying that this occurred. And I think in these circumstances, that's definitely more likely than not false. And so they should have been allowed in on those grounds. In this case, the trial court was under the assumption that there had to be falsity. There's no demonstrable falsity. It just has to be more likely than not. And the court made an error with regard to the standard that they used. In this state, those accusations should have come in because they were more likely false than not. And because it supported an inference that whatever led her to make those accusations against the sons supported the same basis or motive that led her to make those accusations against the father. There was a link between those two, the sons and the father, that would underlie the basis or the motive in this particular case. Because the evidence should have been allowed and the failure to allow it, again, another avenue in which Mr. Bramey was unable to challenge the credibility that was so essential in this case to prove his innocence, it was a violation of the Sixth Amendment right. And I ask that this court vacate this conviction. And that's all that I have. If you have any other questions. How does the rape shield statute apply to this? Rape shield doesn't apply. In people v. Brown, the court determined that with regard to prior false accusations of sexual assault, it's beyond the rape shield statute. So rape shield in and of itself wouldn't keep it out. The prior false accusations get in as a form of impeachment with regard to showing improper interest, bias, or motive. But they do have to be shown to be more likely false than not to come in. Does that answer your question? Thank you. Mr. Manchin. Good afternoon, Your Honors. May it please the court, counsel. In this case, it boils down to the question of the discretion of the trial court in the admission of evidence. And the standard for judging the trial court's admission of abuse of discretion is, was it arbitrary, fanciful, or would no reasonable person take the view adopted by the trial court? And viewed in that way. Well, wouldn't it be somewhat arbitrary if she made three denials to the CAC that you could only get one of them in? Well, in people v. Tenor, the Supreme Court said, yes, you can limit if the victim makes more than one inconsistent statement. You don't have to let them all in. You can just let them one in and say that there was X additional. That's exactly what happened in people v. Tenor. Is that what happened here? That's what happened here. The trial court said you can ask these two questions. This one here is perfectly clear that it's a denial. You can ask, did you make this particular statement? Then you can ask, did you make six similar statements denying that anything ever happened? That was what the trial court ruled, and the exact questions that the, let's see if I can find the, what questions, the exact questions were asked, but it was the exact questions that were asked at trial. Did you deny this happened using exact language of the quote? It said, did you make six statements denying anything happened in that conversation? The victim says yes. I don't know what more can be done. I don't know that it's any more effective or less effective to go through each of these statements, each of which has its own problems. The problems that the court was concerned about bleeding in of the evidence as regarding the sons or the other accused people. The problems with, is this really inconsistent statements? The one that says, trial court says, to say this is an inconsistent statement is to give a bonus to the defendant. This is really not inconsistent. But yet he allowed them to say it made six inconsistent statements. Why isn't it inconsistent? Well, the trial judge, it's page 20, volume 20, verses 35-36, and the, was doing with why would Katie say what she did without expressing a denial there. That's how the trial court analyzed it. It's on page 10 of my brief where I have the trial court's quote, how he had analyzed this particular question and answer and say, it doesn't have anything to do, this entire line of inquiry amounts to a persistence in witnesses' denial of abuse, but it literally doesn't have anything to do with that. It has to do with her judging why Katie would say what she did without explicitly expressing a denial there. That's what trial court finds with regards to, I guess, the fifth excerpt that the defendant wanted to use. He says, for me to conclude this is a denial in a sense is a gift to the defense. Characterizing this as one of the denials is not literally accurate. That's what the trial court found with respect to that particular quote. So the trial court was weighing this. This is not an arbitrary decision. The right to confrontation is the right to effective confrontation, but not confrontation in whatever manner and whatever means the defendant desires. The trial court can put limitations to avoid confusion, repetition, harassment of the witness, whatever. And I think that the trial court did not abuse the discretion of imposing this limitation. Okay, these questions are confusing. Her answers are confusing. Some of them where she says, what was it, junta, we don't even know what that means. Is that a denial or is that an agreement? We don't know. So is it literally correct to say that she made a denial at that point? And, of course, nobody followed up with that junta to know is that a denial or is it an agreement or is that, what does that mean? So if the trial court's concerns regarding confusion and repetition and getting too far afield to have to bring things into context, bringing in the problem of how are we going to keep out this, that she's being asked about more than one person with this set of questions, I think the trial court's determination was correct and it did not impair the defendant's ability to impeach. He got the fact that she made six statements to the police that said nothing happened. That was before the jury. I do not think that any reasonable person would disagree with the court that that is just as effective as going through each of these questions individually, especially given the nature of some of these answers and the problems that the trial court solved. The trial court's decision did not deny the defendant his right of confrontation, did not deny him his right to present his defense. He got exactly what he wanted, just not in the manner he would have preferred. He would have preferred to go through it line by line, dot by dot, word by word. Neither the confrontation clause nor the right to cross-examine requires the trial court to allow him that precise leeway. He can put limitation on it to avoid confusion, repetition, and the like. And that is exactly what the trial court did here. And I think that looking at not only that line of inquiry as far as the cross-examination impeachment, that the defendant's right to impeach the witness was not impaired by this particular limitation. With respect to the proof of the quote-unquote false accusation, the defendant below made no offer of proof as to exactly what the testimony was that he was going to present. He says, I will do that at the next hearing. Never did. The rule is, before the trial court's ruling can be found to be an abuse of discretion, the defendant has to make an absolutely clear offer of proof exactly what is being offered and what is not being offered. The defendant didn't do it, that's a waiver. Well, we know what it was, the acquittals in the two previous cases. Well, the case law is clear that you cannot just put on an acquittal, that you cannot say that the defendant was acquitted or that he was found hung jury, that the verdict reached by the other jury would not be admissible because it is not proof that the statement was false. It is just a determination by a jury that there's not enough here to prove beyond a reasonable doubt. That does not mean it is false. The jury could believe the witness is telling the truth and that there was a crime here, but still find that there is a reasonable doubt because it's not, you know, every T is not crossed or I dotted. They just have some residual doubt, you know. It doesn't test the smell test. It looks like he's probably telling the truth, but the state just hasn't proved it. I'm trying to remember Ms. Terrence's response when I was asking her about that. She was saying that because the jury acquitted it, it means it must be false. Juries can issue acquittals for any number of reasons, just not just because they don't believe the witness's, the victim's testimony. They can just say that, yeah, something happened here, we're not sure quite what, but we're not sure that the state proved what they said they were going to prove. That does not prove it is false. What the cases have looked for when they're dealing with false accusations is situations where the victim makes the accusations and then retracts it and says, yeah, I was lying about that. That is generally where this comes in or where there's some kind of objective proof, you know, like DNA evidence proving that there could have been no crime or whatever. Not this he said, she said. Because as the trial court noted, you're going to have a series of many trials within this trial running a risk of confusing the jury. Okay, what are the charges here? What is the testimony as to the charges here? It's the idea of throwing a paint can at the wall hoping something will stick that the jury will be confused by and not be able to convict because they don't know what's going on. And again, the theory that this was in Cookson, in Grano, the court ruled that prior false accusations did not fall under the rape shield. That's all they said. It doesn't fall under the rape shield because it's not prior actions or prior sexual activity. It did not go on to address the second question. Is there another theory under which this could or should be allowed? It just said the trial court was wrong in excluding it based on the rape shield. In Cookson, the Supreme Court created a, the general rule at the time is that a witness cannot be impeached with evidence that at some former time they lied about some other matter. That's the general rule. In Cookson, the Supreme Court seems to have created a small exception for that in the sexual assault cases. Where the defendant can establish that they're bringing it under the theory of motive. In this case, the defendant never tried to bring it in under the theory of motive in the trial court. The first time we hear about motive is here on appeal. Below, the defendant was simply arguing this is not covered by the rape shield statute. Therefore, I can get it in. And the trial court excluded it under the general rule that you can't prove prior false statements on the part of the witness. On a different matter at a different time. So I do not believe that the trial court abused discretion in that respect either. Particularly given the fact that the defendant stated I will make an offer of proof as to what I want to bring in. And then never did it. So we don't know for sure what it is that the defendant was going to present. Was it just the fact that they were accused and they were acquitted? Or was it going to be expressed detailed testimony from the two sons? From this record, we don't know. Was it a denial of them? Or was it to say, yeah, we did something, but it was all consensual? Or it was all taken out of context? Or whatever their answer was. That there was hugging going on or whatever it was, but it wasn't sexual abuse. Because on this record, we don't know what happened in the other cases. Because the defendant never took the trouble of either asking the trial court to take judicial notice of the testimony of the other one. Or made an offer of proof. Instead, said I'll make an offer of proof as to what I want to present. And then never did it. If a victim in a sex case admits that she had made prior false accusations against others, is that admissible? Under Cookson, I believe that it would be. That they have created. I'll take a step back. It might be, depending upon the circumstances. If it was as to a different person than the defendant. And there's no relationship at all between the defendant and that third person. Say she claimed that her next door neighbor, two doors down the street, had fondled her. And then she admits that that was false. That would not be admissible under Cookson. Unless you could show how there's some kind of motive between her false accusation against Mr. X. And as opposed to the defendant. That's the only way it would come in under Cookson. Is to show motive. And they said in Cookson, if I believe correctly. That there was no. I've got to check my. Whether or not there was a close enough relationship between the third party accused and the defendant. To show the general motive. Bias. Under Cookson. Unless you can show motive. The very fact that there's a false accusation. Proven false. Would still not get in unless you can establish some kind of link to a motive. I can see that. If she was lying about stealing money from a grocery store or something like that. That doesn't come in. That only comes in. You'd have to show the general reputation of the community for lying. But in this case. Where we're so similar. The allegations are so similar. Isn't there a different rule? Well we don't know that they're so similar. And perhaps motivation. And perhaps motivation. Unless you're going to create a rule. That any time a witness or a rape victim has made a false accusation. That he's got a penchant or habit. It's going back to the old standard of. Let's put the victim on trial rather than the defendant. And that is what the rape shield statute was. And what the limitation with opposing Cookson was. How far are we going to do it? I can see situations where you have a victim. Who has accused ten different people of the exact same act. You can say maybe there's a woman there. That she's got some kind of mental disease. That causes her to make these false accusations. That might come in. But just the fact that there's a false accusation of somebody else. Totally unrelated or anything like that. Let me try to put it in a different context. And this is theoretical. But kind of based on if the defense is right. In terms of whether or not the defendant here was guilty or not. This is a young girl. A teenage girl who's made allegations against stepbrothers. Because, you know, she was not getting her way necessarily at home. And then made allegations against the stepfather. Because she wasn't getting her way at home. I mean there's a pattern there that is, you know, a discernible pattern. She's not making allegations against strangers. Or, you know, schoolmates or anything like that. But she's trying to run the household. And this is how she's trying to do it. Now, if we can get past the first hurdle of proving the falsity of those accusations. Because if you get it, it's only the falsity that gets in. Because if you're trying to bring in the fact that she's having sex with the brothers. The stepbrothers or whatever. Or the defendant's sons. That would not be admissible under any theory because of the racial center. Even if it's her way of running the household by granting favors to everybody to get whatever she wants from them. That would not get in. And I don't think that without the proof of the falsity. That's what the whole analogy that this motive hangs on is. Is this proven false? And just a he said, she said. I don't think is enough to say this is false. To say that yes, you should be allowed to bring this in. Thank you. Thank you, Your Honor. Ms. Terrence, rebuttal. I first want to address the prior false accusations. First of all, this court doesn't have to create a new rule or a new exception. Pursuant to Cookson, the Supreme Court in 2005 decided that prior false accusations do come in. They come in when they show an improper motive, an improper interest, or a bias. Now, that bias against the third party has to be linked to the defendant. There has to be some rational link that the motivation that caused the first prior false accusation is the same motive underlying the accusation against the defendant. Which we have here. The accusation against the sons would necessarily apply to the father. They're all in the same household. NP is unhappy. She wants to use the car. She can't. She wants a car. She can't have it. The sons get to use the car. They get to do what they want. She's not in that position. So, whatever motivation she had for those accusations against the sons necessarily applied to the father. As with regard to the falsity, we don't have to prove falsity to the extent of proving that he's guilty of a crime. It's just got to be relevant. The falsity just has to be more likely than not false. And in this case, if an acquittal doesn't serve as something to show that it's more likely than not false, then you are requiring the defendant to prove absolutely that the allegations were false and it didn't happen. And with regard to the prior inconsistent statements, you have a Sixth Amendment right to confrontation, to cross-examining, the right to challenge the credibility of a witness with prior inconsistent statements. You have to balance that right when you want to compromise it. And in this situation, where the compromise is simply to avoid confusion, where confusion didn't necessarily exist, to avoid problems with the completeness doctrine, where it didn't necessarily exist, is not sufficient. And in that regard, there was an abuse of discretion because the statements should have come in. It was critical to the effectiveness of the defense in challenging the credibility of this witness for these impeachments to come in, and they didn't. And it resulted in a conviction that shouldn't have happened. And I ask this Court to vacate that conviction. Thank you. We'll take this matter under advisement and stand in recess until the readiness of the next case.